## SWALLOW *vs.* THE STATE.

1. The offence of gaming is complete by playing once.
2. An unoccupied store house, situated in a town, and fronting on the street, if habitually resorted to by persons for the purpose of playing cards, comes within the provision of the statute against playing cards at any "out house where people resort."
3. A charge to the jury in a criminal case "that if any one or more of their number differed from the majority of the panel as to the guilt or innocence of the defendant, they might properly waive their convictions and agree with the majority, but were not bound to do so," is calculated to mislead the jury, and is therefore erroneous.

ERROR to the Circuit Court of Pickens.

Tried before the Hon. Turner Reavis.

The plaintiff in error was indicted for playing at cards "in an out house where people did then and there resort."

The proof was that he was seen to play but on one occasion. The house in which the playing took place was described as an unoccupied store house in the town of Memphis, in Pickens county, and was one of a continuous line fronting on the street. At the time of the playing the doors and windows were closed, and it was so dark, that although it was day time, a candle had to be used. The house was commonly kept locked, and the key was kept by one White, of whom the defendant and others procured it at the time they played. A witness proved that he had seen persons playing

cards in this house once or twice, and that one of these times was the time at which said Swallow played.

The court charged the jury, that "if they believed the evidence, said house was an out house, and that if they believed that people resorted there for the purpose of playing cards, they must find the defendant guilty." The court refused to charge, at the request of the counsel for Swallow, "that if defendant had played at cards but once in said house, and had no knowledge of any other playing, that defendant should not be found guilty."

The counsel for Swallow, in his argument to the jury, maintained "that if any one or more of them should not be satisfied of the guilt of the defendant, it would be his or their duty not to consent to a conviction, but to stand out against a majority." In reference to this argument, the court charged the jury "that if any one or more of their number differed from the majority of the panel as to the guilt or innocence of the defendant, they might properly waive their convictions and agree with the majority, but were not bound to do so."

The charges of the court given as aforesaid, and the refusal to charge as requested, are assigned as errors.

A. B. CLITHERALL, for plaintiff in error.

M. A. BALDWIN, Attorney General, contra.

1. Court charged if jury believed the evidence, it was an out house; and if they believed people resorted there for the purpose of playing cards that they must find defendant guilty. There was no error in this charge. State v. Falconer, 2 McCord, 438; Cameron v. State, 15 Ala., 383.

2. The court charged jury, if any one or more of them differed with the majority, they might properly waive their conviction and agree with the majority, but were not bound to do so. This appears to me to be the proper rule, or else how can a jury ever agree when there is any difference of opinion? It was nothing more than the expression of a truism on the part of the court, as in Blackwell v. State, 9 A. R., 79.

3. The charge asked was properly refused. Playing once in a place inhibited by statute is indictable. Cameron v. State, 15 A. R., 383.

PHELAN, J.—This court has decided, in the case of Cameron v. State, 15 Ala., 383, that "the offence of gaming is complete by playing *once*." This case disposes of that point.

It is quite clear that a vacant store house, such as that described in this case, if habitually resorted to by persons for the purpose of playing cards, comes within the provisions of the statute against playing at any "out house where people resort." The case of Cameron v. State goes to this point also. The question whether it was so resorted to or not was properly left to the jury.

In the charge given by the court to the jury, "that if any one or more of their number differed from the majority of the panel as to the guilt or innocence of the defendant, they might properly waive their convictions and agree with the majority, but they were not bound to do so," we think the court erred. This charge it appears was elicited by the argument of defendant's counsel to the jury, in which he contended it was the duty of every juror to "stand out against a majority" if not satisfied himself of defendant's guilt. It is better to give such arguments free scope in criminal cases, than to meet them with a charge from the bench, which is at all calculated to embarrass the minds of a jury with nice distinctions in respect to their duty. The oath of a juror points out to him his duty plainly; it is, "to render a true verdict according to the evidence." That the plainest man can understand, and every honest man will fulfil. As to the consultation of the jury room, and the modes of arriving at one mind among twelve men, on a disputed question of fact, or of law and fact, there are no special rules to be laid down. In all cases of difficulty let them take their oath as a guide; how far each man will follow his own understanding of the case, or adopt the understanding of others, is left to himself. There may be nothing in the charge of the court that seriously militates with this view of the subject; still we are inclined to think, that the charge to a jury, that where one or more differed from the majority "they might *properly waive* their *convictions*," is such a charge as was calculated to mislead, and that this would not be cured by adding that "they were not bound to do so."

For this error in the charge of the court, the judgment is reversed and the cause remanded.